Sidney DANIELSON, Regional Director, Region 2 of the National Labor Relations Board, For and on Behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

LOCAL 814, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, and Santini Brothers, Inc., Respondents.

No. 73 Civ. 325.

United States District Court,
S. D. New York.
March 16, 1973.

Raymond P. Green, New York City, for petitioner.

Cohen, Weiss & Simon, New York City, for respondent Local 814; Bruce H. Simon, New York City, of counsel.

Levin & Weissman, New York City, for respondent Santini Brothers, Inc.; Jeffrey L. Kreisberg, Aaron Weissman, New York City, of counsel.

ROBERT J. WARD, District Judge.

The Regional Director, Region 2, of the National Labor Relations Board ("the Board"), has filed this petition pursuant to Section 10(*l*) of the National Labor Relations Act, as amended, 29 U.S.C § 160(*l*) (1965) ("the Act"), for a temporary injunction against Santini Brothers, Inc. ("Santini") and Local 814, International Brotherhood of Teamsters ("Local 814"), pending the resolution of certain matters now before the Board. For the reasons hereinafter discussed, the petition is granted.

A charge was filed with the Board by one Karl Lieb, Esq., on behalf of certain owner-operators of vehicles doing business with Santini, alleging that respondents have and are engaging in unfair labor practices within the meaning of Sections 8(b)4(i), (ii)(A) and (B), and 8(e) of the Act. 29 U.S.C. Sections 158(b)4(i), (ii)(A) and (B), and 158(e) (1965).

■ Section 8(b)4(A) forbids labor organizations from attempting to coerce an employer (whether primary or secondary), or self-employed person, into joining any labor or employer organization. The section also outlaws labor action, the object of which is to force or require an employer or self-employed person to enter into any agreement prohibited by Section 8(e) of the Act. Section 8(b)4(B), which contains the secondary boycott provisions of the Act, is aimed at "shielding unoffending employers and others from pressures in controversies not their own." NLRB v. Denver Bldg. & Constr. Trades Council, 341 U.S. 675, 692, 71 S.Ct. 943, 953, 95 L.Ed. 1284 (1951). Section 8(e), added in 1959 by the Landrum-Griffin Act, closed loopholes which enabled labor unions to circumvent the secondary boycott provisions, by making unlawful contracts with employers in which the employer agreed not to handle products of another employer or to cease doing business with any other person.

■ Thus, Sections 8(b)4(i), (ii)B and 8(e) are intended to prevent union activity designed to influence persons who are not immediate parties to the union's dispute. The test for determining whether union activity is "primary" in nature was enunciated in National Woodwork Manufacturers Association v. NLRB, 386 U.S. 612, 645, 87 S.Ct. 1250, 1268, 18 L.Ed.2d 357:

> The touchstone is whether the agreement or its maintenance is addressed to the labor relations of the contracting employer *vis-a-vis* his own employees.

*The Alleged Violations of Section 8(e) of the Act:*

Respondent Santini, a New York corporation engaged in local and interstate household and commercial moving, has, in the course of its operations, contracted with persons who own and operate their own vehicles for long distance moving. As noted above, these owner-operators are the charging parties before the Board. Petitioner contends that an agreement between respondent Local 814 and the Movers and Warehousemen's Association of Greater New York, Inc., an employer association of which Santini is a member, requires Santini to compel the owner-operators to become members of Local 814.

Petitioner contends further that since 1962 Santini has been contracting with owner-operators for long distance interstate runs and since 1964 employee drivers of Santini have not performed a significant amount of this work. The owner-operators are not members of Local 814.

In early 1971, during negotiations for a new contract between Local 814 and Santini, the Union proposed what is now

Article 24 of the Contract.[1] This Article provides that all long distance drivers would be covered under the agreement as "employees", and would be subject to the Union Security provisions which required all employees to become members of Local 814 after being employed thirty-one days.

Petitioner asserts that Article 24 of the 1971 contract as interpreted and enforced is not designed to protect unit work because employees of Santini have not performed long distance moving since 1964, in that the owner-operators are not themselves employees of Santini. Therefore, petitioner argues, Section 8(e) of the Act is violated. Petitioner also contends that Article 24 was reaffirmed by Local 814 and Santini within six months prior to the instant charge, as required by Section 10(b) of the Act.[2] This contention has not been contested by respondents.

*The Alleged Violations of 8(b)4(i), (ii) A and B of the Act:*

Petitioner argues that Local 814 has engaged in work stoppages against Santini and threatens other such work stoppages for the purpose of requiring the owner-operators to join Local 814. This action on the part of the union, petition-er claims, constitutes a clear violation of 8(b)4(i), (ii)A. In addition, petitioner asserts that Section 8(b)4(i), (ii)B was violated in that on October 30, 1972, Local 814 "induced and encouraged" Santini employees who were members of Local 814 to engage in a work stoppage an object of which was to "force or require" Santini to terminate its business with non-union owner-operators who were independent contractors.

*The Role of the Federal District Court:*

Sections 10(a), (b) and (c) of the Act empower the Board to hear and determine complaints that employers or labor organizations have engaged in unfair labor practices. Section 10(*l*) of the Act states that if after investigating a charge of an unfair labor practice under certain sections of the Act (including Sections 8(b)4(A) and (B) and 8(e)), the investigating officer has

> reasonable cause to believe such charge is true and that a complaint should issue, he shall, on behalf of the Board, petition any United States district court . . . for appropriate injunctive relief pending the final adjudication of the Board . . . . Upon the filing of any such petition the district court shall have jurisdic-

---

1. The relevant portion of Article 24 states:

    *Contract Employees*

    A.1. All persons performing long distance driving under contract to an employer covered by this agreement (whether as 'owner-operator,' 'owner-driver,' 'percentage driver,' 'commission driver,' 'contract driver,' or otherwise) shall be covered by this agreement as employees (hereinafter referred to as contract employees).

    2. Contract employees shall be covered by this contract limited to those provisions set forth in this section and including the Union Security, Pension and Welfare provisions, Legal Separability, No-Strike, Grievance and Arbitration clauses and Union Check-Off.

    3. The employer shall make appropriate provision for Contract Employees as employees under Social Security Workmens Compensation and Unemployment Insurance benefits.

4. The employer specifically reserves the right, consistant with its Agency Van Line Agreement, to control the manner and means and details of and by which Contract employees perform services as well as the ends to be accomplished. All other details and economic arrangements shall be the subject of a contract between the owner of the vehicle and the employer party to this agreement provided that they shall not conflict with the provisions of this Article 24.

2. Section 10(b) provides that a complaint will not issue in relation to conduct which occurs more than six months prior to the filing of a charge. A violation of Section 8(e) occurs within the 10(b) period when an employer or a union insists on the enforcement of an unlawful agreement under Section 8(e) within six months of the filing of a charge.

tion to grant such injunctive relief . . . as it deems just and proper . . . .

The Second Circuit has determined the standard for granting injunctive relief under Section 10(*l*):

The role of the district court in a 10(*l*) case is not to determine whether there has in fact been a violation of the Act but rather to determine whether the Regional Director could have *reasonable cause to believe* that the unfair labor practice charged had been committed and that its continuation ought to be enjoined . . . . We have interpreted that requirement to mean that there must be a "reasonable possibility" that the unfair labor practice charge will be sustained by the Board. National Maritime U. of Amer. v. Commerce Tankers Corp., 457 F.2d 1127, 1133 (2nd Cir. 1972) (citations omitted).

*Are the Owner-Operators Employees or Independent Contractors?*

██ A major portion of the hearing and the briefs herein are devoted to this issue. If the owner-operators are employees of Santini no unfair labor practices have been committed because under those circumstances Article 24 and the work stoppage would clearly have had the legal purpose of protecting unit work and no illegal secondary boycott would have occurred. Thus, in order to grant injunctive relief, keeping in mind the Court of Appeals pronouncement in *National Maritime, supra*, this Court must determine that there is a "reasonable possibility" that the Board will find that the owner-operators are not employees, but are independent contractors.

██ In determining whether the owner-operators are independent contractors or employees, the Board has applied the common law right-of-control test. Fleet Transport Co., Inc., 196 NLRB No. 61, 80 L.R.R.M. 1047 (April 18, 1972). *See also,* Deaton Truck Line v. NLRB, 337 F.2d 697, 698 (5th Cir. 1964). Under that test, a person is an employee when the employer reserves both the right to control the ends and the means to be achieved. On the other hand, when only the former is controlled by the employer, an independent contractor relationship exists. No single factor is determinative of the right-of-control test. Rather, all of the factors which comprise the relationship between the employer and alleged employee must be considered by the Board.

██ That the relationship between Santini and the owner-operators herein involves complex and numerous factors is uncontested. Some of the important factors which could persuade the Board to determine that the owner-operators are employees include:

1. Santini determines the qualifications of the owner-operators;

2. Santini may disqualify those owner-operators who are not qualified or fail to pass the physical;

3. Santini may terminate the contracts of owner-operators who violate state laws and Department of Transportation safety regulations;

4. Santini requires 60-day inspections of the vehicles;

5. Santini exercises exclusive possession, control, and responsibility for all leased equipment for the term of the lease;

6. Santini requires all owner-operators to file logs and other reports;

7. Santini determines the percentage of gross revenue to be paid to the owner-operators; and

8. All of the leased vehicles must display Santini's name.

*See,* Pony Trucking, Inc., 198 NLRB No. 59, 81 L.R.R.M. 1249 (August 3, 1972).

On the other hand, important factors exist which would enable the Board to conclude that an independent contractor relationship exists herein. For example:

1. Owner-operators pay for the costs of operation, maintenance, repairs and fuel. They also decide where to have repairs made;

2. Santini makes no deductions for Social Security, or Federal or State income taxes;

3. Owner-operators are paid on a "per trip basis" and are free to choose their own working hours;

4. Owner-operators may select their own routes and helpers;

5. Owner-operators may reject loads without penalty; and

6. Owner-operators do not enjoy any fringe benefits which employees of Santini receive.

See, Fleet Transport Co., Inc., *supra*.

Thus, although it can not be certain how the Board will ultimately rule, this Court has determined that certainly a "reasonable possibility" exists that the Board will find that the owner-operators are independent contractors. This determination is strengthened by a review of *Fleet* and *Pony*, *supra*, which involved facts substantially similar to those herein. Nevertheless, in *Fleet*, the Board held that the owner-operators there were independent contractors, while in *Pony*, the Board held that the owner-operators were employees.[3] Under these circumstances, and under the rule of *National Maritime*, *supra*, this Court is constrained to grant the injunctive relief which the Board has sought.

Respondent Local 814 argues further that even assuming that the owner-operators are independent contractors, the union's actions were for the lawful purpose of protecting and preserving job opportunities in its collective bargaining unit. At the hearing there was testimony to the effect that for a number of years the employees of Santini have not performed the work which is now performed by the owner-operators. Nevertheless, Local 814 asserts that "work" which a union is entitled to protect includes work which had in the past been performed by the unit but which has been lost. The argument is not persuasive when applied to this case. This Court concludes that there is a "reasonable possibility" that the Board will find that a loss of unit work several years ago can not now be a basis for the "work recapture theory", and that the work performed by the owner-operators is not "fairly claimable" by Santini's employees. *Cf.* Meat and Highway Drivers v. NLRB, 118 U.S.App.D.C. 287, 335 F. 2d 709 (1964). Thus, the Board could reasonably find that Local 814's actions were not for the lawful purpose of work preservation.

Accordingly, the petition for a temporary injunction pursuant to Section 10(*l*) of the National Labor Relations Act, as amended, is granted.

Settle order on notice.

---

3. Respondent Local 814 argues that *Fleet* is distinguishable. There, certain elements of control were surrendered by the employer subsequent to a finding by the Regional Director that the owner-operators were employees. These elements of control have not been surrendered by Santini. Nevertheless, the Board in *Fleet*, in determining that the owner-operators were independent contractors, stated that:

(t)he owner-operator, rather than the Employer, now determines what days and hours to work, what routes to use, where to have repairs made and purchase fuel, and where to park his tractor when it is not in use. He is free to refuse loads without penalty and to decide whether to hire or fire a driver, what work rules to impose on his drivers, and what rates of pay and fringe benefits the drivers will receive.

The above factors appear to have been determinative in *Fleet*. The owner-operators here enjoy all of these elements of control.