JAMES HOLCOMB AND LEONA HOLCOMB
*v.* FARMERS INSURANCE EXCHANGE

73-20                                       495 S.W. 2d 155

Opinion delivered May 21, 1973
[Rehearing denied June 25, 1973.]

*Bon McCourtney & Associates* by: *Troy L. Henry,* for appellants.

*Cockrill, Laser, McGehee, Sharp & Boswell,* for appellee.

J. FRED JONES, Justice. James Holcomb owned a 1971 Ford Maverick and his wife, Leona Holcomb, owned a 1965 Plymouth. They both had separate liability insurance policies issued by Farmers Insurance Exchange on their respective automobiles. Mr. Holcomb had uninsured motorist coverage on his Ford but Mrs. Holcomb had rejected uninsured motorist coverage on her Plymouth. Mr. Holcomb was driving his wife's Plymouth

when it was damaged and he and Mrs. Holcomb were injured in a collision caused by the negligence of an uninsured motorist. Mr. and Mrs. Holcomb filed suit against Farmers and against the uninsured motorist, Sammy Walker, for the sum of $25,000. The trial court granted Farmers' motion for a summary judgment.

On appeal to this court the Holcombs contend that the exclusion in the insurance policy relied on by Farmers is void and against public policy under the uninsured motorist statute; that there are material issues of fact in dispute and the trial court erred in granting Farmers' motion for summary judgment.

The statute in question, Ark. Stat. Ann. § 66-4003 (Repl. 1966) reads as follows:

"No automobile liability insurance, covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this State with respect to any motor vehicle registered or principally garaged in this State unless coverage is provided therein or supplemental thereto, in not less than limits described in section 27 of Act 347 of 1953 [§ 75-1427], as amended, under provisions filed with and approved by the Insurance Commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; provided, however, that the coverage required under this section shall not be applicable where any insured named in the policy shall reject the coverage."

Under the policy involved in this case James Holcomb is the named insured under Item 1 and the vehicle described is a 1971 Maverick. The policy is divided into Part I, covering liability, and Part II, pertaining to the benefits for bodily injury caused by uninsured motorists. Certain exclusions are set out under each part but under Part I the company agrees:

"To pay all damages the insured becomes legally obligated to pay because of:

(A) bodily injury to any person, and/or (B) damage to property arising out of the ownership, maintenance or use, including loading or unloading, of the described automobile or a non-owned automobile."

In Part I under "Definition of Named Insured" the policy provides:

"If the insured named in Item 1 of the Declarations is an individual, the term 'named insured' includes his spouse if a resident of the same household."

And in Part I under "Definition of Insured" the policy provides:

"The unqualified word 'insured' includes

(a) with respect to the described automobile, (1) the named insured, and (2) any other person while using such automobile and any other person or organization legally responsible for its use, provided the actual use of such automobile is by the named insured or with his permission; and

(b) with respect to a non-owned automobile, (1) the named insured or a relative, and (2) any other person or organization not owning or hiring such automobile if legally responsible for its use by the named insured or a relative, but only in the event such named insured or relative is legally liable for the occurrence; provided the actual use of the non-owned automobile by the persons in (1) and (2) above is with the permission of the owner."

Under Part I "Non-Owned Automobile" is defined as:

"[A]n automobile not owned by or regularly or frequently used by the named insured or any resident of the same household, other than a substitute automobile."

"[A]n automobile not owned by the named insured or any resident of the same household, while temporarily used with the permission of the owner, as a substitute for the described automobile when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction."

Under Part II, coverage (C) of the policy, the company agrees:

"To pay all sums which the owner or operator of an uninsured motor vehicle would be legally responsible to pay as damages to the insured because of bodily injury sustained by the insured, caused by accident, and arising out of the ownership, maintenance or use of such uninsured motor vehicle; provided that, (1) insurance under Coverage A of this policy must be in effect at the time of such accident."

Under "Definitions" in Part II the policy provides:

"The following definitions in Part I apply to Part II: 'Bodily injury', 'Damages', 'Newly Acquired Automobile', 'Non-Owned Automobile', 'Relative', 'Substitute Automobile', 'Named Insured' . . .

Described Automobile means the automobile described in the policy Declarations for which Uninsured Motorists insurance is indicated as covered, including a newly acquired automobile or a substitute automobile.

Insured means (1) the nam. ' insured or a relative, (2) any other person wh .e occupying an insured motor vehicle, and (3) any person, with respect to damages he is entitled to recover because of bodily injury to which Part II applies sustained by an insured under (1) or (2) above."

Under "Exclusions" in Part II the policy provides:

"This policy does not apply under Part II: * * * (3) to bodily injury to an insured while occupying

an automobile or 2 wheel motor vehicle (other than an insured motor vehicle) owned by a named insured or any relative resident in the same household, or through being struck by such vehicle."

It was Farmers' contention that Mrs. Holcomb was an insured as the spouse of Mr. Holcomb and a resident of the same household, and therefore, that both were occupying a motor vehicle (other than an insured motor vehilce) owned by a named insured, within the exclusionary clause of the policy. The trial court agreed with Farmers, so the question presented on this appeal is whether the policy exclusion is void or contrary to the public policy under § 66-4003, *supra.* More specifically the question is whether Mr. and Mrs. Holcomb's protection against uninsured motorist provided under the policy on Mr. Holcomb's automobile followed and protected them while riding in another automobile owned by them and on which the uninsured motorist protection or coverage had been rejected. The precise question presented here has not been before this court previously but the courts of other states have reached different results under facts and policy provisions similar to the case at bar and statutory provisions similar to our own. In the 1971 Arizona case of *Owens* v. *Allied Mut. Ins. Co.,* 15 Ariz. App. 181, 487 P. 2d 402, the plaintiff insured appealed from a summary judgment in favor of his insurance company. The plaintiff owned a Chevrolet on which he had uninsured motorist coverage but was driving his uninsured 1962 Studebaker when he was injured in a collision with an uninsured motorist. The plaintift contended that his protection against uninsured motorist under the policy on the Chevrolet extended to cover him while driving the uninsured Studebaker. The insurance policy contained an identical provision as does the policy in the case at bar, to the effect that the protection afforded did not apply "to bodily injury to an insured while occupying an automobile (other than the insured automobile) owned by the insured." The plaintiff's sole contention in that case, as is the appellants' contention in the case at bar, was that the exclusion was not valid because the statute mandated uninsured motorist coverage for the named insured even though he might be driving an uninsured self-owned automobile. The Arizona uninsured motor-

ist statute was practically identical with ours in its wording and was identical with ours in meaning. In *Owens* the court said:

> "We can see nothing in the statute which requires an insurer to extend uninsured motorist protection under one policy to a policyholder who has elected not to insure another vehicle owned by him, so as to give coverage at such times as he might be driving that uninsured vehicle. Any other interpretation would allow an insured to purchase one liability policy on one owned vehicle and claim uninsured motorist coverage thereunder for himself and others while driving any number of other uninsured automobiles also owned by him."

In a footnote to *Owens* the court quoted from a previous Arizona case in which it was said:

> " 'In light of that stated purpose, the question is whether or not the statute is intended to restrict the privilege of an individual to contract with his insurance carrier to exclude his own personal recovery under the policy terms in the event of his own injury. We read nothing in the statute which states such a restriction nor do we find ourselves compelled by public policy to so construe this statute.' "

In the 1970 Illinois case of *McElyea* v. *Safeway Ins. Co.*, 266 N.E. 2d 146, the plaintiff insured owned a Chevrolet one-half ton truck on which Safeway had issued a policy with "Family Protection Coverage" with an uninsured motorist provision similar to the one in the case at bar, and with an exclusionary clause providing that the endorsement did not apply "to bodily injury to an insured while occupying an automobile (other than an insured automobile) owned by a named insured or any relative resident in the same household . . . ." The insured plaintiff was struck and injured by a hit and run vehicle while riding a motorcycle he owned. The plaintiff sued his insurance company under the uninsured motorist provision of his policy on the truck and the trial court struck his complaint and dismissed the action. The Illinois statute made it mandatory for the issuing insurance companies to assume liability for

an additional risk (uninsured motorist) on automobile liability policies. In affirming the trial court in that case, the appellate court of Illinois said:

> "We find no conflict between the public policy of this state as evidenced by Section 755a and the exclusionary provisions of the uninsured motorist endorsement in the present policy."

In the 1968 Nebraska case of *Shipley* v. *American Standard Ins. Co. of Wis.,* 158 N.W. 2d 238, the plaintiff insured owned a Chevrolet automobile and a motorcycle. He had liability insurance with uninsured motorist coverage on the automobile but none on his motorcycle. He was injured when his motorcycle collided with another uninsured motorcycle. His suit on the uninsured motorist endorsement of his automobile policy was dismissed on the ground that no cause of action was stated. The policy contained similar provisions with a similar exclusion as the policy in the case at bar and the insurance company relied on the exclusion clause. The court considered the motorcycle as coming within the "owned automobile" provision of the policy and the Nebraska statute prohibited the delivery of an automobile liability policy "unless coverage is provided * * * for the protection of persons insured thereunder who are legally entitled to recover damages from * * * operators of uninsured motor vehicles. . . . " The Supreme Court of Nebraska affirmed the judgment holding that to do otherwise would be unreasonable.

The appellants cite the 1967 Virginia case of *Allstate Ins. Co.* v. *Meeks,* 153 S. E. 2d 222, as being a case with similar facts and policy exclusion as in the case at bar, in which the Virginia court held that uninsured motorist coverage on an insured automobile extended coverage to the injured owner, as one of a class, while driving his uninsured automobile. The Virginia court pointed out in that case that the uninsured motorist statute,

> "as amended, defines the term 'insured' as, 'the *named insured* and, while resident of the same household, the spouse of any such named insured, and relatives of either, *while in a motor vehicle or otherwise. . . .*"

The Virginia court then said:

> "Here the language used does not limit or restrict the coverage to the named insured while he is in or operating the vehicle covered by the policy. On the contrary, the coverage extends to him while he is 'in a motor vehicle,' that is, in any motor vehicle, 'or otherwise.' "

We point out here that Ark. Stat. Ann. § 66-4003, *supra*, which applies to the case at bar, contains no such provision.

The appellants correctly argue that the Florida case of *United States Fidelity & Guaranty Co. v. Webb*, 191 So. 2d 869, relied on by the appellee at the trial, was overturned by the Florida Supreme Court in the case of *Mullis v. State Farm Mut. Automobile Ins. Co.*, 252 So. 2d 229. The Florida court in *Mullis* compared the state's financial responsibility statute with the Uninsured Motorist Act and found that the complementary provisions of the two Acts indicated the intention that the uninsured motorist act should provide uniform and specific benefits to members of the public to cover damages for bodily injury caused by the negligence of insolvent and uninsured motorists.

The appellants cite the California case of *Aetna Ins. Co. v. Hurst*, App. 83 Cal. Rptr. 156, 2 Cal. App. 3rd 1067. In that case Hurst owned a motorcycle and his wife owned an automobile covered by liability insurance with uninsured motorist coverage. Hurst was riding his morcycle when he was injured by an uninsured motorist. The policy provision and the exclusion were similar to the ones in the case at bar, but as in *Allstate v. Meeks, supra,* the statute was not. The California court held the exclusion to be ineffective but in doing so, pointed out that the California statute defined insured in two classes of which the claimant was a member of the first class, and provided that the definition of insured covered "the named insured and family, who are insured 'while occupants of a motor vehicle *or otherwise,'"* (Our emphasis).

Apparently Nevada has adopted the view the appellants urge on us in the case at bar. In *State Farm Mut. Automobile Ins. Co.* v. *Hinkel,* 488 P. 2d 1151, Gordon Hinkel, a minor, was operating a motorcycle owned by him and was involved in an accident with an uninsured motorist. Gordon's father owned an automobile covered by a liability policy with uninsured motorist coverage. The Nevada court found the statutorily expressed public policy of that state to be, "that an insurance company may not issue an automobile or motor vehicle liability policy which does not protect the insured from owners or operators of uninsured motor vehicles, unless the named insured rejects such coverage." The court then held that since young Hinkel's father did not reject the coverage, he and the residents of his house, his spouse and the relatives of either, were entitled to uninsured motorist protection without limitation, and that his coverage is not dependant upon whether or not he is in any kind of vehicle.

It is a matter of common knowledge that in most automobile use related injuries two automobiles and drivers are involved. Under the broad coverage insisted on by the appellants, by the purchase of single coverage on one automobile an owner could protect himself and his entire family against financial loss caused by uninsured motorists while each of them are themselves driving uninsured and uninsurable automobiles. We are of the opinion such was not the intent of the Legislature in the enactment of § 66-4003.

We conclude, therefore, that Ark. Stat. Ann. § 66-4003 does not restrict contracts between liability insurance companies and the owners of automobiles in this state to the extent urged by the appellants, and we hold that the policy exclusion in the case at bar was valid and effective in this case.

The judgment is affirmed.

HARRIS, C.J., and GEORGE ROSE SMITH and FOGLEMAN, JJ., dissent.

JOHN A. FOGLEMAN, Justice, dissenting. My reasons for dissenting in this case of first impression are twofold.

First, I regret to see this court align itself with a pitifully small minority in deciding such a case. Second, I think that the decision either reads something into the uninsured motorist act that is not there, or reads something out of it that is there. While I probably would not dissent in the absence of those reasons, I feel further urged to do so because the court's decision leaves Arkansas in the absurd position, as appellants point out, of requiring the automobile liability carrier to offer insurance providing persons insured under the liability policy with indemnity up to the required amounts against bodily injury by an uninsured motorist at any place, at least in this nation, except when occupying an owned automobile, on which the owner carried no liability insurance, or, if he did, that policy did not contain an uninsured motorist clause. The absurdity of this result is further illustrated by a statement in Winslow Drummond's "Uninsured Motorist Coverage—A suggested Approach to Consistency," 25 Ark. L. Rev. 167, p. 171:

> A comparison of the first two categories of "insured" leads to the obvious conclusion that the named insured and any member of his family in the same household need not be occupying any automobile, much less an insured automobile, at the time of injury in order for coverage to be extended. In other words, if one of this category, however situated, is injured through the negligence of an uninsured motorist, there is coverage.

I agree with that statement and think it should be applied in this case.[1] Other pertinent statements in that article include:

---

[1] I am not unaware of Mr. Drummond's statement that the exclusion of coverage involved here is *designed* to prevent recovery in those cases where uninsured motorist coverage is purchased for only one automobile within a particular household, and a member of the household sustains injury while occupying a second family car on which no premium for uninsured motorist coverage has been paid. He cites only *Hilton* v. *Citizens Ins. Co.,* 201 So.2d 904 (Fla. App. 1967) as authority. He acknowledges that *Hilton* was distinguished in *Travelers Indem. Co.* v. *Powell,* 206 So. 2d 244 (Fla. App. 1968), on the ground that in the latter case (as here) the same carrier provided coverage to both vehicles. My analysis of *Hilton* causes me to doubt it as an authority for the author's statement. At any rate, any doubt about the validity of such an exclusion has been dispelled in *Mullis* v. *State Farm Mutual Automobile Ins. Co.,* 252 So.2d 229 (Fla. 1971), where it was held invalid. It must be recalled that Drummond's article was written in 1969.

All courts which have considered the question are in accord that the purpose of or public policy underlying the compulsory uninsured motorist coverage statute is to guarantee that the injured insured will be in the same position in the event of injury attributable to the negligence of an uninsured motorist as that insured would be if he were injured through the negligence of a motorist carrying liability insurance to the extent required by the financial responsibility law of the state in question. In other words, the insured's recovery should be the same in either situation—no more, no less.

* * *

A motorist who purchases liability insurance on his automobile does so for the benefit of an unidentified third party. On the other hand, the motorist who purchases uninsured motorist coverage does so for his own benefit *and* the benefit of his family *and* any passengers in his automobile. Uninsured motorist insurance is *not* liability insurance. To the contrary, it is, in effect, accident and health insurance, very similar to automobile medical payments insurance.

The purpose of our act is to establish a means of providing indemnity to the persons insured under an automobile liability policy for injuries arising out of the operation of a motor vehicle by an uninsured motorist in an amount not less than the minimum required by the Motor Vehicle Safety Responsibility Act. *Travelers Ins. Co.* v. *National Farmers U. Prop. & Cas. Co.,* 252 Ark. 624, 480 S.W.2d 585; *Heiss, Executrix* v. *Aetna Cas. & Surety Co.,* 250 Ark. 474, 465 S.W.2d 699; *Farm Bureau Mut. Ins. Co.* v. *Mitchell,* 249 Ark. 127, 458 S.W.2d 395; *MFA Mutual Ins. Co.* v. *Bradshaw,* 245 Ark. 95, 431 S.W.2d 252. Any purchaser of "automobile liability insurance covering liability arising out of ownership, maintenance or use of *any* motor vehicle * * * delivered or issued for delivery in this State with respect to *any* motor vehicle registered or principally garaged in this State * * * " is clearly entitled, at his option, to "coverage * * * therein or supplemental thereto, in not less than limits described * * * for the protection of *persons insured thereunder* who are legally entitled to recover

damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom"—no more and certainly no less. Ark. Stat. Ann. § 66-4003 (Repl. 1966). Any exception or exclusion gives him less and is contrary to the public policy purposes of our act. It seems to me that the clear language of the statute dictates a result directly contrary to that reached by the majority.

We have recognized the right of the parties to contract in reference to such a policy, so long as the terms of the contract are not contrary to public policy and the statutes, but that these may not be contravened, even with the approval of the Insurance Commissioner. *Travelers Ins. Co.* v. *National Farmers U. Prop. & Cas. Co.,* supra. I submit that, under our previous decisions, the exclusion here contravenes both. It is clear that the coverage required has nothing whatever to do with the vehicle for which the liability policy is issued. If this were not otherwise clear, the fact that the coverage need not be provided in the liability policy, but may be provided supplementally, seems to lead to no other conclusion. The insurer selling automobile liability insurance is simply required to offer to its prospective purchasers of liability insurance, either in the liability policy or by separate policy, indemnity against any personal injury damage done to persons insured under its liability policy indemnity in the minimum amounts that are required under the motor vehicle financial responsibility act—no more, no less. There simply is no "uninsured motorist protection or coverage" on any *automobile,* as premised by the majority.

This brings me to a consideration of authorities from other states on the question. Clearly a majority supports my position. First, however, I will direct my attention to *Owens* v. *Allied Mutual Ins. Co.,* 15 Ariz. App. 181, 487 P.2d 402 (1971), which seems to be the leading authority upon which the majority relies. The Arizona statute is quite similar to ours. This decision by an intermediate appellate court rests upon a rickety foundation, to say the least. That court not only failed to see a requirement of uninsured motorist protection to persons insured under a liability policy, which covered them when driving any automobile anywhere, but also failed to find any contrary

authority. Furthermore, the *Owens* court did not rationalize its result. It simply concurred in the result reached in *Rushing* v. *Allstate Insurance Co.,* 216 So. 2d 875 (La. App. 1968); *National Union Indemnity Co.* v. *Hodges,* 238 So.2d 673 (Fla. Ct. App. 1970); *McElyea* v. *Safeway Insurance Co.,* 131 Ill. App. 2d 452, 266 N.E. 2d 146 (Ill. App. 1970). It is interesting to note that even though each of these decisions by intermediate courts has been undermined and its authoritative effect impaired, the majority not only accepts *Owens* as authoritative, it also finds succor in *McElyea.*

*McElyea* was effectively overruled in *Doxtater* v. *State Farm Mutual Automobile Ins. Co.,* 8 Ill. App. 3d 547, 290 N.E.2d 284 (1972). In *Doxtater,* the court said that the issues before it were virtually identical to those presented in *McElyea,* but that *McElyea* was decided prior to the decision of the Illinois Supreme Court in *Barnes* v. *Powell,* 49 Ill. 2d 449, 275 N.E.2d 377 (1971), and *Madison County Automobile Ins. Co.* v. *Goodpasture,* 49 Ill. 2d 555, 276 N.E.2d 289 (1971). In overruling *McElyea* to the extent it conflicted with the opinion rendered, the language in *Doxtater* is so appropriate to the situation before us, our statute and our previous decisions, I take the liberty of quoting extensively from the Illinois court's recognition of the effect of *Barnes.* It said:

> Numerous authorities were cited for the proposition that the legislative purpose behind Section 143a was "to assure that compensation will be available to policyholders, in the event of injury by an uninsured motorist, to at least the same extent compensation is available for injury by a motorist who is insured in compliance with the Financial Responsibility Law." (49 Ill.2d at 453, 275 N.E.2d at 379.) It was further noted that "the intent of the legislature was that the uninsured motorist coverage would protect an insured generally against injuries caused by motorists who are uninsured, and by hit-and-run motorists, and that this would complement the liability coverage." (49 Ill.2d at 454, 275 N.E.2d at 379.) Therefore, it was held that, to the extent that the policy definition conflicted with the breadth of coverage envisioned by the statute, it could be of no force and effect.

Although we recognize that the facts of Barnes v. Powell are distinguishable from the facts at bar, we nonetheless cannot overlook the Supreme Court's statements therein regarding the legislative intent behind Section 143a. The expansive interpretation applied by a majority of that court leads us to conclude that, presented with the issue at bar, our Supreme Court would interpret Section 143a of the Insurance Code as a direction to insurance companies to provide uninsured motor vehicle coverage for "insureds," regardless of whether, at the time of injury, the insureds occupied or operated vehicles declared in the subject policy. We note that the highest courts in two other states have recently invoked similar statutory constructions to enforce coverage under facts identical to those at bar. (State Farm Mutual Automobile Ins. Co. v. Hinkel, Nev., 488 P.2d 1151; Mullis v. State Farm Mutual Automobile Ins. Co., Fla., 252 So.2d 229, Contra: Shipley v. American Standard Ins. Co. of Wisconsin, 183 Neb. 109, 158 N.W.2d 238; Owens v. Allied Mutual Ins. Co., 15 Ariz. App. 181, 487 P.2d 402. See also Vantine v. Aetna Cas. & Surety Co. (N.D.Ind.) 335 F.Supp. 1296; Vaught v. State Farm Fire & Cas. Co. (8th Cir.) 413 F.2d 539; Bryant v. State Farm Mutual Automobile Ins. Co., 205 Va. 897, 140 S.E.2d 817).

It is only with great circumspection that we will overturn a ruling of as recent a vintage as McElyea v. Safeway Insurance Co. However, as the intermediate court of review in Illinois, we are obligated to adhere to the statutory constructions applied by our Supreme Court and to decide issues in conformity with the logical extensions of such constructions. Further, as jurists we cannot ignore the weight and trend of authority in jurisdictions outside of Illinois. Accordingly, based on the precedent of Barnes v. Powell, 49 Ill.2d 449, 275 N.E.2d 377, as well as on compelling out-of-state precedent, we hold that Exclusion (b) in the insurance policy issued to Ervin Doxtater conflicted with Section 143a of the Insurance Code. By virtue of Section 442 of that Code, said exclusion could be of no force and effect in limiting the Doxtaters' uninsured motor vehicle coverage. Hart-

ford Accident and Indemnity Co. v. Holada, 127 Ill. App.2d 472, 262 N.E.2d 359. To the extent that the case of McElyea v. Safeway Insurance Co., conflicts with this holding, it is overruled.

*National Union Indemnity Co.* v. *Hodge*, has suffered a similar fate. It was reversed by the Florida Supreme Court, 249 So.2d 679 (Fla. 1971). In *Mullis* v. *State Farm Mutual Automobile Insurance Co.*, 252 So.2d 229 (Fla. 1971), the Florida Supreme Court undertook conflict certiorari review of *Mullis* v. *State Farm Mutual Automobile Ins. Co.*, 231 So.2d 46 (Fla. App. 1970). The Supreme Court found the exclusion before us to be contrary to the Florida uninsured motorist statute, an act virtually identical to ours, and said:

> Whenever bodily injury is inflicted upon named insured or insured members of his family by the negligence of an uninsured motorist, under whatever conditions, locations, or circumstances, any of such insureds happen to be in at the time, they are covered by uninsured motorist liability insurance issued pursuant to requirements of Section 627.0851. They may be pedestrians at the time of such injury, they may be riding in motor vehicles of others or in public conveyances and they may occupy motor vehicles (including Honda motorcycles) owned by but which are not "insured automobiles" of named insured.

> Uninsured motorist coverage or family protection is intended by the statute to protect the described insureds thereunder to the extent of the limits described in Section 324.021(7) "who are legally entitled to recover damages, namely those from owners or operators of uninsured motor vehicles because of bodily injury" and is not to be "whittled away" by exclusions and exceptions.

> Bodily injury to a member of the public due to motor vehicle accident, whether produced by the negligence of an automobile liability insured or by an uninsured motorist has the same financial loss impact on the injured member of the public, and in the eyes of our reciprocal motorist public

protection laws, F.S. chapter 324 and section 627.0851, F.S.A., the injury is just as acute and damaging to the member of the public whether he was injured as a pedestrian or while riding in a public conveyance or in an "uninsured automobile."

The public policy of the uninsured motorist statute (Section 627.0851) is to provide uniform and specific insurance benefits to members of the public to cover damages for bodily injury caused by the negligence of insolvent or uninsured motorists and such *statutorily fixed* and prescribed protection is not reducible by insurers' policy exclusions and exceptions any more than are the benefits provided for persons protected by automobile liability insurance secured in compliance with the Financial Responsibility Law.

Insurers or carriers writing automobile liability insurance and reciprocal uninsured motorist insurance are not per: itted *by law* to insert provisions in the policies they issue that exclude or reduce the liability coverage prescribed *by law* for the class of persons insured thereunder who are legally entitled to recover damages from owners or operators of motor vehicles because of bodily injury.

Certainly *Hodge* is not authoritative. The rule of *Mullis* has been subsequently applied in Florida in *Gilligan* v. *Liberty Mutual Ins. Co.,* 265 So.2d 543 (Fla. App. 1972); *Navarro* v. *Yosemite Ins. Co.,* 254 So.2d 33 (Fla. App. 1971); *Government Employees Ins. Co.* v. *Smith,* 257 So. 2d 90 (Fla. App. 1971); *Midwest Mutual Ins. Co.* v. *Santiesteban,* 266 So. 2d 102 (Fla. App. 1972).

The fate of *Rushing* has been little more auspicious. It does not appear to have ever been followed in Louisiana. In a much better-reasoned decision in a factual background much more nearly parallel to the case before us than was *Rushing,* the Court of Appeals for another Louisiana Circuit reached quite a different result from that in *Rushing.* The question answered in the negative in *Elledge* v. *Warren,* 263 So. 2d 912 (La. App. 1972), was the same as the majority answers in the affirmative here. Again some of the reasoning of the Louisiana court is appropriate to our consideration:

There existed in our society a situation whereby financially irresponsible people could acquire and drive vehicles capable of great damage. Because of their financial irresponsibility and lack of insurance, they were unable to respond to their victim in damages under LSA—C.C. Art. 2315. This created a class of injured people in our state who were left without recourse and who, without some form of relief, might become wards of the state. Insurance plans (such as the financial responsibility law) oriented toward coercing motorists to purchase insurance or removing them from the highways if they did not, proved ineffective. Other plans had to be developed.

In an effort to forestall plans distasteful to itself, the insurance industry set forth a plan of compensation for the innocent victims of the uninsured motorists. In surveying the problem, it became evident to our legislature that the source of the harm was a danger peculiar to the use of the automobile and the industry most capable and most interested in resolving the problem was the one most closely related thereto in terms of economics and self interest —the automobile insurers. Therefore, our legislature seized upon the solution set forth by the insurance industry and made the offering of uninsured motorist protection a mandatory condition precedent before the companies could conduct business in Louisiana.

The evil and the injuries existed. By the terms of our statute, whenever evil perpetuates itself upon a policy holder availing himself of uninsured motorist coverage (or insureds under his policy), he is to be compensated for his injuries. In Booth v. Freeman's Fund Insurance Company, 253 La. 521, 218 So.2d 580, 583 (1969), our Supreme Court concluded "that the intent of our uninsured motorist statute and the policy endorsement issued thereunder is to afford protection to the insured when they become the innocent victims of the negligence of uninsured motorists." See also Valdez v. Federal Mutual Insurance Company, 272 Cal.App.2d 223, 77 Cal.Rptr. 411, 413 (1969). ". . . Such statutes must be liberally con-

strued to carry out this objective of providing compensation for those injured through no fault of their own."

Clearly, we should not follow the Arizona intermediate court. This leaves the Nebraska decision in *Shipley* v. *American Standard Ins. Co. of Wisconsin,* 183 Neb. 109, 158 N.W.2d 238 (1968), standing alone, except for the dissenting opinions mentioned by the majority. I submit that a reading of that opinion in contrast with the quotations above will clearly demonstrate the lack of logic supporting the decision in *Shipley.*

I do not find the majority's distinction of cases supporting the majority rule to be wholly apt. It is true that *Allstate Insurance Company* v. *Meeks,* 207 Va. 897, 153 S.E.2d 222 (1967), and *Aetna Ins. Co.* v. *Hurst,* 2 Cal. App. 3d 1067, 83 Cal. Rptr. 156 (1969), involve the construction of a statute and not a contract, and that the statute naming the persons insured is explicit as to coverage. So does *Gulf American Fire & Casualty Company* v. *McNeal,* 115 Ga. App. 286, 154 S. E. 2d 411 (1967), but the court said that if the "insured person" section of the statute (virtually identical to the Virginia and California statutes) did not apply, it would reach the same result under the policy provisions. I do not agree that the rationale of *Mullis* is distinguishable on the basis that the Florida Uninsured Motorist and Financial Responsibility Acts are complementary. So are ours.

*State Farm Mutual Automobile Ins. Co.* v. *Hinkel,* 87 Nev. 478, 488 P.2d 1151 (1971), seems indistinguishable. It is a well-reasoned opinion which specifically rejected *Rushing* and *Shipley,* but found support in *Allstate Ins. Co.* v. *Meeks,* supra, *Travelers Indemnity Co.* v. *Powell,* supra, *Aetna Insurance Co.* v. *Hurst,* 2 Cal. App. 3d 1067, 83 Cal. Rptr. 156 (1969), *Bankes* v. *State Farm Mutual Automobile Ins. Co.,* 216 Pa. Super. 162, 264 A.2d 197 (1970) and *Gulf American Fire & Casualty Company* v. *McNeal,* supra. The Nevada statute, substantially similar to ours, was held to be unambiguous, to be a part of every policy and to void an exclusion substantially similar to the one in the policy before us. The Nevada court, in holding that once a person was included as a "person

insured" the insurer could not exclude him from coverage and that any limitation on his coverage was void, said:

> If our legislature had intended to prevent an owner of two motor vehicles from paying for insurance on only one and recovering benefits for his injuries sustained while operating the other, it could have followed the lead of the legislatures in some of the other jurisdictions and limited the coverage by providing that N.R.S. 693.115(1) did not apply to bodily injury suffered by the insured while occupying a motor vehicle owned by him, unless the occupied vehicle was an insured motor vehicle. Such an amendment would be the prerogative and responsibility of the legislature and not the function of this court.

See also, *Cannon* v. *American Underwriters*, 275 N.E.2d 567 (Ind. App. 1971), where the court rejected an attempt of an insurance company to limit coverage to injuries while the insured was operating or occupying an insured automobile, upon the same basis and rationale as the majority rule; and *Vantine* v. *Aetna Casualty & Surety Company*, 335 F. Supp. 1296 (D.C.Ind. 1971), wherein an exclusion virtually identical to the one in issue was held void as being in conflict with a virtually identical Indiana statute, and the infirmities of *McElyea* are pointed out.

In conclusion, I find appropriate language in *Motorists Mut. Ins. Co.* v. *Bittler*, 14 Ohio Misc. 23, 43 Ohio Op. 2d 64, 235 N.E.2d 745 (1968), a frequently cited trial court case, where the court appreciated that its decision would require that uninsured motorists coverage would cover a named insured while he is operating or occupying another otherwise uninsured automobile owned by him. The court said:

> Since the uninsured motorists protection chiefly constitutes indemnification in the nature of personal accident insurance for the named insured, there is, in the absence of any special provision or exclusion, no need for his procuring and paying for two such contracts for one injury. This special indemnification contract becomes effective because a third person, not the named insured, operates an automobile without Bodily Injury Liability coverage.

I would reverse the judgment because adoption of the position of the majority of jurisdictions considering the question is clearly indicated by our statute, and would produce a desirable result, consistent with the policy of which the act is expressive, and prevents erosion of coverage by exclusions, exceptions and limitation.

I am authorized to state that the Chief Justice and Mr. Justice George Rose Smith join in this dissent.