**James Joseph OTTO, Plaintiff-Appellant,**

v.

**FARMERS INSURANCE COMPANY, Defendant-Respondent.**

**No. KCD 28240.**

Missouri Court of Appeals, Kansas City District.

Aug. 8, 1977.

Motion for Rehearing and/or Transfer Denied Aug. 29, 1977.

Application to Transfer Denied Oct. 11, 1977.

---

William Brandecker, Jr., Ronald E. Smull, Brandecker & Smull, Columbia, for plaintiff-appellant.

Hamp Ford, G. Bernard Esser, III, Knight & Ford, Columbia, for defendant-respondent.

Before WASSERSTROM, P. J., and SOMERVILLE and TURNAGE, JJ.

PER CURIAM.

Plaintiff (hereinafter referred to as insured), under the uninsured motorist coverage of his automobile insurance policy, brought suit against defendant (hereinafter referred to as insurer) for bodily injuries sustained as the result of a vehicular collision with an uninsured motorist. The trial court sustained insurer's motion for summary judgment, and insured has appealed.

Rule 74.04(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." On appeal, appellate courts are obliged to review the record in the light most favorable to the party against whom summary judgment was rendered and determine whether a genuine issue of fact exists. *Wood v. James B. Nutter & Co.*, 416 S.W.2d 635, 636 (Mo.1967); *O'Leary v. McCarty*, 492 S.W.2d 124, 129 (Mo.App.1973); and *Weber v. Les Petite Academies, Inc.*, 490 S.W.2d 278, 280 (Mo.App.1973).

The various pleadings, depositions, admissions and affidavits on file form a reservoir of facts which must be explored in order to determine whether summary judgment in favor of insurer properly lies in this case. As gleaned therefrom, the following facts stand undisputed. Insurer issued to insured a policy of automobile insurance (same was attached to insured's petition as an exhibit and incorporated therein by reference) with an effective date of February 12, 1971 and an expiration date of August 12, 1971. Therein, insured was the "named insured" and the "described automobile" was a 1967 Austin Healey. Liability, uninsured motorist, medical, comprehensive and collision coverage were afforded by the policy. Insured paid insurer the required premium for all coverages. On or about April 23, 1971, insured sold his 1967 Austin Healey and did not acquire a replacement automobile during the remainder of the policy period. However, insured purchased a Yamaha 250 motorcycle and, on May 7, 1971, in Columbia, Missouri, while operating said motorcycle, was involved in collision with a 1965 Pontiac operated by Wilbur Dewey, Jr. The motorcycle never became an insured motor vehicle under the policy.

Insured, absent insurer's written consent to do so, brought suit against Dewey for damages, and, on June 15, 1972, obtained a judgment against Dewey in the amount of $17,500.00 for personal injuries. Copies of the summons and petition regarding the suit against Dewey were never forwarded to insurer by insured. Believing Dewey to be an uninsured motorist, insured, within a few days after the accident, and prior to filing suit against Dewey, inquired of and was told by the agent from whom he purchased the policy of insurance that any injuries sustained in the collision with Dewey were not within the purview of the uninsured motorist coverage afforded by the policy because insured was riding and operating a motorcycle at the time. According to the agent, he informed insured, after consultation with insurer, that no coverage existed under the uninsured motorist provision of the policy. In the petition filed and served on insurer, insured pleaded that

Dewey was an uninsured motorist; in its answer, insurer pleaded that it was "without knowledge or information sufficient to form a belief as to the truth" of said allegation.

Notwithstanding the undisputed facts heretofore set forth, insured contends on appeal that insurer was not entitled to summary judgment as a matter of law. As the trial court gave no hint as to the reason or basis for granting summary judgment in favor of insurer, insured on appeal addresses the purported impropriety of the trial court's doing so in the context of the four grounds advanced by insurer at the trial level. Insurer on appeal seeks to validate the summary judgment rendered in its favor on the same four grounds. The four grounds relied upon by insurer at the trial level, all of which are inversely restated as points relied upon by insured in his brief, relate to separate policy provisions, each of which will be set forth and disposed of seriately.

### (POINT ONE)

Part II of said policy, designated "COVERAGE C/ Benefits for Bodily Injury Caused by Uninsured Motorists", reads, in part, as follows: "To pay all sums which the owner or operator of an uninsured motor vehicle would be legally responsible to pay as damages to the insured because of bodily injury sustained by the insured, caused by accident, and arising out of the ownership, maintenance or use of said uninsured motor vehicle; provided that: (1) insurance under Coverage A ["Liability Insurance"] of this policy must be in effect at the time of such accident . . . ." Insurer argues that since it stands undisputed that insured sold his 1967 Austin Healey (the "described automobile" in said policy) prior to the accident with the purported uninsured motorist and never acquired another automobile during the policy period, no "liability insurance" was or could be in effect at the time said accident occurred. Insurer summarily concludes that insured's sale of the 1967 Austin Healey, prior to the accident, coupled with the fact that insured

did not acquire a replacement automobile, terminated the liability coverage. Hence, no "insurance under Coverage A" of said policy was "in effect at the time of such accident . . . ." Although insured concedes that liability coverage under the policy did not extend to his Yamaha motorcycle, he vigorously contends that liability coverage thereunder was still in effect even though inapplicable to the accident in question.

■ Part I of said policy, designated "COVERAGES A and B/ Liability Insurance", reads, in part, as follows: "To pay all damages the insured becomes legally obligated to pay because of: (A) bodily injury to any person, and/or (B) damage to property arising out of the ownership, maintenance or use, including loading or unloading, of the described automobile or a non-owned automobile." By the terms of the policy, liability coverage was not limited to insured's 1967 Austin Healey, the "described automobile", as it also extended to a "non-owned automobile" as defined in said policy. The proviso, supra, relied upon by insurer is cast in terms of liability coverage being "in effect at the time of the accident" not in terms of being applicable to the accident. Even though insured no longer owned the "described automobile", or a "newly acquired automobile" as defined in the policy, liability coverage, albeit limited in scope by certain prescribed policy provisions, was nevertheless still in effect at the time of the accident with the uninsured motorist in view of coverage extended to qualified "non-owned automobiles". *State Farm Mut. Automobile Ins. Co. v. Western Casualty & Surety Co.*, 477 S.W.2d 421 (Mo. banc 1972). See also *Equity Mutual Insurance Company v. Riley*, 475 S.W.2d 416 (Mo.App.1971). In *Freeport Motor Casualty Co. v. Tharp*, 338 Ill.App. 593, 88 N.E.2d 499, 500–01 (1949), where an insurer attempted to disclaim liability coverage because the insured had previously sold and no longer owned an automobile at the time he was involved in an accident while driving an automobile owned by a third party, the court bluntly held as follows: "We find

no precedent for a conclusion that the coverage afforded by the policy was terminated by the sale of the automobile by the insured . . . [and] . . . [w]e find nothing in the language of the policy which terminates the coverage . . .". The policy proviso immediately heretofore discussed afforded no basis to support the summary judgment.

### (POINT TWO)

Part II of said policy ("COVERAGE C—Benefits for Bodily Injury Caused by Uninsured Motorists") contains the following exclusion: "This policy does not apply under Part II . . . (3) to bodily injury to an insured while occupying an automobile or 2 wheel motor vehicle (other than an insured motor vehicle) owned by a named insured or any relative resident in the same household, or through being struck by such vehicles . . . ." The uncontroverted facts disclose beyond peradventure that insured was clearly within this policy exclusion as he was riding a motorcycle which he owned which was not an insured motor vehicle at the time of the accident with the alleged uninsured motorist. Insured seeks to obviate application of the above exclusion on the ground that it impermissibly limited his uninsured motorist coverage in contravention of the public policy reflected by Section 379.203, RSMo Supp. 1973. Insurer, understandably, contends that the policy exclusion is valid and controlling and does not offend public policy.

Insurer's contention has certain initial momentum by reason of *Barton v. American Family Mutual Insurance Co.*, 485 S.W.2d 628 (Mo.App.1972). In *Barton*, under facts very similar to those at hand, this court held that a substantially similar policy exclusion was valid and enforceable and denied recovery to the insured therein under his uninsured motorist coverage. A two-pronged attack was made upon the policy exclusion in *Barton*: (1) that it never effectively became a part of the policy in question; and (2) that it was ambiguous. The validity of the exclusionary clause vis-a-vis Section 379.203, supra, and the public

policy which prompted its enactment was not in issue. For that reason, *Barton v. American Family Mutual Insurance Co.*, supra, is not deemed controlling and the validity of the exclusionary clause in the instant case becomes an apical issue in light of Section 379.203, supra, and its underlying public policy.

■ Section 379.203, supra, so far as here pertinent, provides that "[n]o automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits for bodily injury or death set forth in section 303.030, RSMo, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom . . . ." The underlying public policy which prompted enactment of this statute was to give persons insured by such coverage, when injured by an uninsured motorist, protection parallel to that which they would have had if they had been injured in an accident caused by a motor vehicle covered by the minimum liability requirements of the financial responsibility law. *Brake v. MFA Mutual Insurance Co.*, 525 S.W.2d 109, 112 (Mo.App. 1975); and *Webb v. State Farm Mutual Automobile Insurance Co.*, 479 S.W.2d 148, 151 (Mo.App.1972).

■ Section 379.203, supra, becomes a part of every policy of insurance to which it is applicable to the same effect as if it were written out in full in the policy itself. *Ward v. Allstate Insurance Co.*, 514 S.W.2d 576, 578 (Mo. banc 1974). An insurer may limit the coverage afforded an insured under a policy only so long as doing so is not violative of public policy or interdicted by statute. *MFA Mutual Insurance Co. v. Dunlap*, 525 S.W.2d 766, 769 (Mo.App.1975); and *Webb v. State Farm Mutual Automobile Insurance Co.*, supra, 479 S.W.2d at 150.

The conceptual nature of uninsured motorist insurance must be distinguished from other types of insurance, for example automobile liability insurance. The former is akin to accident insurance (albeit restricted to a limited type of accident) as it compensates for a loss suffered by an insured, as opposed to the latter which indemnifies an insured against liability for losses suffered by third parties. See 44 C.J.S. Insurance § 19, p. 480 (1945). Thus, uninsured motorist insurance should not be confused as inuring to a particular vehicle as in the case of automobile liability insurance. To the contrary, uninsured motorist insurance inures to an individual insured for bodily injury inflicted by the tortious act of an uninsured motorist.

Exclusionary clauses comparable to that presently under consideration have been a prolific source of litigation in other jurisdictions. Statutes in a number of states mandating uninsured motorist coverage are so dissimilar to Section 379.203, supra, that cases construing like exclusionary clauses within their frameworks are of no authoritative consequence. See, for example, *Lowery v. State Farm Mutual Automobile Insurance Co.*, 285 So.2d 767 (Miss.1973), holding a parallel exclusionary clause void as against public policy as the uninsured motorist statute in Mississippi included within its definition of "insured" the language "while in a motor vehicle or otherwise", and *Harrison v. California State Automobile Ass'n Inter-Insurance Bureau*, 56 Cal. App.3d 657, 128 Cal.Rptr. 514 (1976), holding a parallel exclusionary clause valid and enforceable as the uninsured motorist statute in California expressly provided for its inclusion in policies issued pursuant to said statute.

This court's independent research discloses that apparently sixteen other jurisdictions having uninsured motorist statutes similar to Section 379.203, supra, when faced with the public policy argument presently tendered by the insured, have divided into two numerically disparate camps regarding the validity or invalidity of analogous exclusionary clauses. Those upholding such exclusionary clauses in the face of a public policy argument fundamentally do so on the theory that they serve a legitimate business purpose. The following cases are representative of this view: *Rodriquez v. Maryland Indemnity Insurance Co.*, 24 Ariz. App. 392, 539 P.2d 196 (1975); and *Holcomb v. Farmers Insurance Exchange*, 254 Ark. 514, 495 S.W.2d 155 (1973).[1] Those striking down such exclusionary clauses as nugatory and unenforceable in the face of a public policy argument fundamentally do so on the theory that they are in derogation of the respective statutes and violative of the pervasive public policy which they were enacted to promote. The following cases are representative of this view: *State Farm Automobile Insurance Co. v. Reaves*, 292 Ala. 218, 292 So.2d 95 (1974); *Mullis v. State Farm Mutual Automobile Insurance Co.*, 252 So.2d 229 (Fla.1971); *Doxtater v. State Farm Mutual Automobile Insurance Co.*, 8 Ill.App.3d 547, 290 N.E.2d 284 (1972); *State Farm Mutual Automobile Insurance Co. v. Robertson*, 156 Ind.App. 149, 295 N.E.2d 626 (1973); *Forrester v. State Farm Mutual Automobile Insurance Co.*, 213 Kan. 442, 517 P.2d 173 (1973); *Thomas v. Nelson*, 295 So.2d 847 (La.App.1974); *Nygaard v. State Farm Mutual Automobile Insurance Co.*, 301 Minn. 10, 221 N.W.2d 151 (1974); *State Farm Mutual Automobile Insurance Co. v. Hinkel*, 87 Nev. 478, 488 P.2d 1151 (1971); *Beek v. Ohio Casualty Insurance Co.*, 135 N.J.Super. 1, 342 A.2d 547 (1975); *Chavez v. State Farm Mutual Automobile Insurance Co.*, 87 N.M. 327, 533 P.2d 100 (1975); *Cothern v. Emcasco Insurance Co.*, 555 P.2d 1037 (Okl.1976); *Bankes v. State Farm Mutual Automobile Insurance Co.*, 216 Pa.Super.Ct. 162, 264 A.2d 197 (1970); *Westchester Fire Insurance Co. v. Tucker*, 512 S.W.2d 679 (Tex.1974); and *Touchette v. Northwestern Mutual Insurance Co.*, 80 Wash.2d 327, 494 P.2d 479 (banc 1972). Thus, cases striking down the validity of

1. The pragmatic frailty of the "legitimate business purposes" theory is perspicaciously pointed out by A. Widiss in *A Guide to Uninsured Motorist Coverage*, 28–30, § 2.9 (1969 & Supp. 1976).

such exclusionary clauses comprise a far larger jurisdictional enclave than do those upholding the validity of such exclusionary clauses.

 The policy exclusion in question is, on its face, repugnant to the mandate of Section 379.203, supra. The statute commands that uninsured motorist coverage be part and parcel of every automobile liability policy issued "for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom." Statutory authority for limiting uninsured motorist coverage, as attempted by the policy exclusion under consideration, is nowhere to be found in Section 379.203, supra. There can be no doubt that the policy exclusion curtails uninsured motorist coverage without regard to the fact that the insured might otherwise be "legally entitled to recover damages" from the owner or operator of an uninsured motor vehicle. Thus, the coverage ostensibly commanded by and statutorily envisioned in Section 379.203, supra, is effectively whittled away. When the instant exclusionary clause is balanced with the conceptual nature of uninsured motorist coverage, the statutory language employed in Section 379.203, supra, and the underlying public policy sought to be furthered thereby, this court is convinced that the majority view, supra, is well taken and merits subscription. Simply put, it is impossible to reconcile the exclusionary clause with Section 379.203, supra, and the avowed public policy sought to be advanced thereby. This court, by judicial fiat, is unwilling to elevate the "legitimate business purposes" theory relied upon in a distinct minority of jurisdictions to the status of a declared public policy when Section 379.203, supra, gives no hint or suggestion that the legislature intended to do so. Exaltation of the "legitimate business purposes" theory to the status of a public policy declaration would be at war with the presently recognized public policy pervading Section 379.-203, supra. The policy exclusion immediately heretofore discussed is void and unenforceable and afforded no basis to support the summary judgment.

(POINT THREE)

 Part II of said policy ("Coverage C—Benefits for Bodily Injury Caused by Uninsured Motorists") also contains the following exclusion: "This policy does not apply under Part II: (1) to damages with respect to which any insured, his legal representative or any person entitled to payment under this coverage shall, without the written consent of the Company, . . . prosecute to judgment any action against any person·or organization who may be legally liable therefor . . . ." The facts clearly disclose that insured did not obtain insurer's written consent before prosecuting his action against Dewey (the alleged uninsured motorist) to a final judgment. Insured contends, and correctly so, that the exclusionary clause just mentioned, notwithstanding the undisputed nature of the attendant facts, did not entitle insurer to a summary judgment. Insured's contention is unassailably confirmed by *State ex rel. State Farm Mutual Automobile Insurance Co. v. Craig*, 364 S.W.2d 343, 346 (Mo. App.1963), involving, as here, an identical exclusion, i. e., judgment prohibition, wherein the court held that "the 'consent' exclusion as a bar to suit must fall . . it would be against public policy to permit a prohibition against resort to the courts for remedy without the consent of the person ultimately liable." The same conclusion was voiced in *Kisling v. MFA Mutual Insurance Co.*, 399 S.W.2d 245, 249 (Mo.App. 1966): "We have no doubt but that the *judgment prohibition* is invalid and unenforceable in this jurisdiction." See generally Annotation, 25 A.L.R.3d 1275, 1283, § 3(b), (1969) for a compilation of cases similarly holding that comparable policy exclusions, i. e., judgment prohibitions, are void and unenforceable because contrary to public policy.

(POINT FOUR)

Finally, Part II of said policy ("COVERAGE C—Benefits for Bodily Injury Caused by Uninsured Motorists") contains the fol-

lowing under the caption "Special Provisions": "Notice of Legal Action: If, before the Company makes payment of loss hereunder, the insured or his representative shall institute any legal action for bodily injury against any other person or organization legally responsible for the use of a motor vehicle involved in the accident, a copy of the summons and complaint or other process served in connection with such legal action shall be forwarded immediately to the Company by the insured or his legal representative." The facts foreclose any argument that insured failed to comply with this notice provision with reference to the action he successfully prosecuted against Dewey (the alleged uninsured motorist). An identical notice provision was held valid in *Roberts v. Jersey Insurance Company of New York*, 457 S.W.2d 244 (Mo.App.1970) and an insured's noncompliance therewith was held to relieve an insurer of liability with respect to uninsured motorist coverage. Nevertheless, it has been held in at least one other jurisdiction that compliance with an identical notice provision is subject to being waived by an insurer. *Crumley v. Travelers Indemnity Co.*, 225 Tenn. 667, 475 S.W.2d 654, 658–59 (1972).

It is appropriate at this point to draw on certain principles applicable to the general field of liability insurance. The following principle recognized in 45 C.J.S. Insurance § 1062, p. 1287 (1946) is apposite: "Ordinarily, insurer under a policy of liability insurance is precluded from resisting recovery on the ground of departure from policy provisions respecting notice and the forwarding of papers where it has denied liability on some other ground." More particularly, cases from other jurisdictions recognize that notice provisions pertaining to automobile liability coverage may be waived by an insurer when it denies liability coverage on some ground other than lack of notice. *Dixie Auto Insurance Co. v. Goudy*, 238 Ark. 432, 382 S.W.2d 380, 382–83 (1964); *Hartford Accident and Indemnity Co. v. Armstrong*, 125 Ind.App. 606, 127 N.E.2d 347, 351 (banc 1955); and *Washington v. National Service Fire Insurance Co.*, 252 S.C. 635, 168 S.E.2d 90, 92–93 (1969).

Insured contends that the record in the instant case poses a genuine issue as to a material fact, namely, whether a binding denial of liability under the uninsured motorist coverage was made by insurer so as to constitute a waiver on its part of insured's noncompliance with the notice provision of the policy. No cogent or persuasive reason springs to mind which would preclude application of the above-mentioned general principle applicable to waiver of policy notice provisions pertaining to automobile liability coverage. For reasons stated, noncompliance with notice provision heretofore set forth did not per se justify the summary judgment entered in favor of insurer.

Having concluded that none of the issues joined on appeal warranted rendition of the summary judgment in favor of insurer, and absent discovery of any other basis for its sustention, this court holds that the summary judgment should be and hereby is reversed.

Judgment reversed and cause remanded for further proceedings not inconsistent with this opinion.