249 So.2d 679 (1971)
Turner HODGES, Petitioner,
v.
NATIONAL UNION INDEMNITY COMPANY, a Pennsylvania Corporation, Respondent.
No. 40190.
Supreme Court of Florida.
May 26, 1971.
Rehearing Denied July 12, 1971.
*680 Alan R. Schwartz of Horton & Schwartz and Welsh & Cornell, Miami, for petitioner.
John W. Thornton, of Stephens, Magill & Thompson, Miami, for respondent.
ERVIN, Justice.
This is a conflict certiorari review of the decision in National Union Indemnity Corp. v. Turner Hodges, DCA 3d, 238 So.2d 673. There, it was held an exclusion in Petitioner Hodges' auto liability policy containing uninsured motorist coverage issued to him by National Union covering his 1964 Buick passenger automobile precluded his recovering from National Union the sum of $4,000 for bodily injury sustained because of the negligence of an uninsured motorist who collided with Hodges while he was driving his "El Camino" 1967 Chevrolet truck.
Hodges' auto liability policy, to which was coupled the uninsured motorist coverage as provided by Sections 627.0851 and 324.021(7), Florida Statutes, F.S.A., contained the related exclusion from uninsured motorist coverage as follows:
"* * * to bodily injury to an insured while occupying an automobile (other than an insured automobile) owned by the named insured or a relative * * *." (Emphasis added.)
One of the questions presented to the District Court was whether the El Camino was an automobile under the policy definitions and intendments. The District Court agreed that it was and reversed the Circuit Judge. 238 So.2d, text 675.
We conclude the District Court was in error and that its decision directly conflicts jurisdictionally with other appellate decisions, as will hereinafter appear. There was sufficient uncertainty and ambiguity as to whether the El Camino was a truck or an automobile within the terms of the policy for the question to be resolved against the insurer. All ambiguities and uncertainties are to be resolved in favor of the insured and against the company; e.g., 18 Fla.Jur., Insurance, § 94, pp. 86-88; Hartnett v. Southern Insurance Co., Fla., 181 So.2d 524; Da Costa v. General Guaranty Ins. Co., Fla. 1969, 226 So.2d 104. Moreover, it has been repeatedly held that the legislative policy of F.S. Section 627.0851, F.S.A., is to provide full statutory uninsured motorist family protection for Florida motorists, unless rejected by the named insured, and to that end any limitations and exclusions of the coverage inserted in the policy by insurer have either been invalidated as contrary to statutory policy or strictly construed against insurer. Zeagler v. Commercial Insurance Co. of Baltimore, Md., Fla.App. 1964, 166 So.2d 616; Davis v. United States Fidelity & Guaranty, Fla.App. 1965, 172 So.2d 485; Sellers v. United States Fidelity and Guaranty Co., Fla. 1966, 185 So.2d 689; Travelers Indemnity Co. v. Powell, Fla.App. 1968, 206 So.2d 244; Butts v. State Farm Mutual Automobile Insurance Co., Fla.App. 1968, 207 So.2d 73; National Service Fire Insurance Co. v. Mikell, Fla.App. 1967, 204 So.2d 343; Forbes v. Allstate Insurance Company, Fla.App. 1968, 210 So.2d 244; Hartford Accident and Indemnity Co. v. Mason, Fla.App. 1968, 210 So.2d 474; American Fire & Casualty Co. v. Williams, Fla.App. 1969, 226 So.2d 141; Valdes v. Prudence Mutual Casualty Co., Fla.App. 1968, 207 So.2d 312; Prudential Life Insurance Co. v. Boyce, Fla.App. 1970, 234 So.2d 704; and Martin v. Nationwide Mut. Fire Ins. Co., Fla.App. 1970, 235 So.2d 14. Lumbermen's Mutual Ins. Co. v. Seaton, (Fla.App.) 207 So.2d 733.
The District Court states, and we agree from our inspection, that there is no definition in the policy of the term "automobile." "Utility automobile," however, is defined for inclusion in coverage as a "truck type not used for business or commercial *681 purposes." It is uncontradicted, and the District Court so states, that insured "used the Camino in his work as a cement finisher." Petitioner deposed that he used the Camino primarily for hauling property used in his business. So considered, the vehicle appears to come within the definition of a "truck" rather than an "automobile," since the state required it to carry a truck license under the applicable provisions of Sections 186.03(57), 317.011(58), and 320.01(10), Florida Statutes, F.S.A.F.S. Section 320.01(10), F.S.A., provides in part:
"(10) `Trucks' includes any motor vehicle designed or used principally for carrying things other than passengers and includes a motor vehicle to which has been added a cabinet box, platform, rack or other equipment for the purpose of carrying merchandise other than the person or effects of the passengers * * *" (Emphasis supplied.)
The District Court states the El Camino "has a passenger type cab and a pick-up truck type rear area." (Emphasis supplied.) 238 So.2d text, 674. As the evidence reflected, it is commonly understood that a pick-up truck is not a passenger automobile and is not licensed as such. If uninsured motorist coverage for bodily injury is to be excluded when sustained while riding in a pick-up truck, contrary to the general policy of the governing statute, the insurer should make such exclusion unmistakably clear and manifest.
Since it has been held generally that an exclusion of uninsured motorist coverage based on the type of vehicle occupied at the time of accident must be expressed in clear, plain and unambiguous language, it is little wonder the Circuit Court concluded the exclusion did not apply to the El Camino. Compare Valdes v. Prudence Mutual Casualty Co., Prudential Life Insurance Co. v. Boyce, and Martin v. Nationwide Mut. Fire Ins. Co., supra.
The fine print of an insurance policy, as we said in Hartnett v. Southern Insurance Co., supra, should not be read to exclude coverage unless it plainly and with certainty "brings home" in unambiguous language to the insured that he is not protected in a certain particular. Here, it was not made clear and unmistakable by the fine print to Mr. Hodges that when he was occupying his pick-up truck used in his business he was considered to be in an uninsured automobile and excluded from his auto liability policy's uninsured motorist coverage. And especially is this so when it is recalled that it has been repeatedly held that uninsured motorist coverage provided pursuant to F.S. Section 627.0851, F.S.A., ordinarily protects a named insured under all circumstances and locations when he is injured by an uninsured motorist as "if the uninsured motorist had carried the minimum limits" of an automobile liability policy. Travelers Indemnity Co. v. Powell, supra, text 246. See also: Continental Ins. Co. v. Wallace (1970 Fla.App.) 233 So.2d 195.
Other points raised by Petitioner need not be gone into in view of our foregoing determination.
The judgment and decision of the District Court of Appeal are quashed with instruction to reinstate the judgment of the Circuit Court.
CARLTON, ADKINS and McCAIN, JJ., concur.
ROBERTS, C.J., and BOYD, J., dissent.
DEKLE, J., dissents with opinion.
DEKLE, Justice (dissenting):
I respectfully dissent and would affirm the Third District. I am impelled to point out the language at the close of the majority opinion where it is stated:
"[I]t has been repeatedly held that uninsured motorist coverage provided pursuant *682 to F.S. Section 627.0851, F.S.A., ordinarily protects a named insured under all circumstances and locations when he is injured by an uninsured motorist as `if the uninsured motorist had carried the minimum limits' of an automobile liability policy. Travelers Indemnity Co. v. Powell, [Fla.App. 1st 1968, 206 So.2d 244 at] 246." (Emphasis added)
I respectfully submit that this generalization is not supported by the authorities. Sellers v. U.S. Fidelity and Guaranty Co., (Ervin, J.), 185 So.2d 689 (Fla. 1966), (reversing U.S. Fidelity and Guaranty Co. v. Sellers, 179 So.2d 608 (1st DCA Fla. 1965)), was dealing with the "pyramiding" of coverage under two policies and held that to the extent of an actual loss such multiple coverage is allowable. Travelers v. Powell, supra, which is the authority cited for the above quote, was explaining the ground of such reversal when it used the quoted language. Thus, the reference above to "as `if the uninsured motorist had carried the minimum limits' of * * * liability" refers to the limitation in amounts recoverable under policies. It is therefore not a "precedent" for this unprecedented reference to an extension of coverage "under all circumstances and locations." This is of course only obiter dicta, being unnecessary to the holding herein affirming the Circuit Court's judgment which did not extend to these gratuitous, unlimited areas discussed in the majority opinion. I feel it should be made clear, however, that this has NOT been the prior "holding" of the authorities and that these words really make their debut in the case at bar.
The closest reference I find to such language is the further statement in Travelers v. Powell, supra (p. 246):
"[T]hat the exclusion clause here [while occupying an automobile owned by a relative] is an invalid restriction because it is not the intent of the statute to limit coverage to an insured by specifying his location or the particular vehicle he is occupying at the time of injury. * *"
To me, this is not the same as saying that recovery applies "under all circumstances and locations" as stated in the majority opinion. The language above in Powell is in the logical context of motor vehicles with which all of the cases are concerned. To use this as a springboard for coverage unrelated to some connection with the use or association with an automobile is not justified.
Powell (at page 247) points out that its language is not so meant when it adheres to United States Fidelity & Guaranty Co. v. Webb, 191 So.2d 869 (1st DCA Fla. 1966) as follows:
"However, we adhere to the Webb decision, it being our view, at that time and today, that it was not the intent of Section 627.0851, Florida Statutes, F.S.A., to allow a member of a family to purchase one liability policy and claim total coverage thereunder for the entire family while vastly increasing the risk to his insurer by knowingly owning and operating a fleet of uninsured vehicles upon the highways. Therefore, the Webb decision is not controlling under the facts of the case sub judice."
The majority view would apply uninsured motorist coverage to the insured while walking across the street, would apply such coverage to his child (as a family member) dashing across the intersection, ad infinitum. There is, after all, some contract basis upon which all of this rests. The statute by its language attaches to a liability policy on a motor vehicle being insured; it does not dangle independently over the insured as an individual.
It will be noted that all of the Florida cases involved deal with injuries related to motor vehicles. The authorities cited from other jurisdictions are also limited to accidents connected with motor vehicles. That is what the "ball game" is all about  motor vehicles, not pedestrians. Indeed, the premise in the language of the statute is "with respect to any motor vehicle. * * *" Under such an unanticipated *683 expansion, the premiums for this kind of coverage could skyrocket  in a sky already filled with the pyrotechnics of insurance increases.
The intention of the enactment is further contained in the language of the Act stating its purpose to be "for the protection of persons insured thereunder" (under the liability policy issued). These are three: (1) named insured, (2) family, and (3) other persons occupying the insured automobile. If uninsured coverage is to be read into the contract for the "persons insured thereunder," it is clearly inconsistent and favors certain members of the same class intended to be benefited, to extend it to "any circumstances" anywhere for a part of the class, namely, family members, but to exclude such unlimited application to the remainder of the class, that is, those who would occupy the insured vehicle. One of such class could easily be the insured's young son's next-door buddy who "always" rides with the family, "goes everywhere" with him. The two go off for a walk together. They are struck by an uninsured vehicle and both are injured. Under the majority's innovation, the insured's son is covered, his buddy is not. Actually, neither is really covered in such circumstance where the essential connection with a vehicle is missing, if consistent effect is to be given to the announced purpose of the Act and if contract rights are to be recognized. We wander into an unending thicket with this kind of illogical extension into midair without the underlying supports of statutory inclusion and of fundamental rights of contract.
I could therefore agree with the extensions of coverage to all insureds in relation to all kinds of vehicles, but there is no rationale or reasonable extension to be gleaned from the statute which applies to the class of persons covered in the policy for their pursuits beyond any connection with the insured automobile, namely, as pedestrians, golfers, etc. This might be properly considered "with respect to" a Homeowners Liability Policy  IF there were an "uninsured homeowner" statute attaching such provision to a Homeowner's Policy. Then if an uninsured owner's dog should bite an "insured," or his golf ball strike, such an extension might stem from the Homeowners Policy by virtue of such a statute. But there is no such extending statute and to extend the motorist statute into such a field is fertile thinking indeed. It ignores the basic premise of the statute which relates to automobile liability insurance.
I respectfully dissent.