470 So.2d 10 (1985)
Paul R. PFEIFFER, Rebecca L. Pfeiffer, W. Donald Cox, Sue P. Cox, M. Virginia Wilhelm, and Parkland Estates Civic Club, Inc., Appellants,
v.
CITY OF TAMPA, Florida, and Robert G. Grieves and Michael E. Urette, Appellees.
No. 84-1474.
District Court of Appeal of Florida, Second District.
April 10, 1985.
Rehearing Denied May 3, 1985.
*12 Donald S. Hart, Jr. and Debra L. Romanello of Moffitt, Hart & Miller, Tampa, for appellants.
Joseph G. Spicola, Jr., City Atty., and Salvatore Territo, Asst. City Atty., Tampa, for appellee City of Tampa.
Robert V. Williams of Taub & Williams, Tampa, for appellees Grieves and Urette.
LEHAN, Judge.
This is a declaratory judgment suit involving statutory construction of legislative intent. The issue is whether the city property in question is effectively zoned C-1 (Neighborhood Commercial District) by an ordinance of the City of Tampa or is restricted to single family residential use by a Special Act of the Florida Legislature. We reverse the Amended Summary Final Judgment which declared that because the legislature intended the property's use to be governed by the City the property is zoned C-1. We have had the benefit of well presented briefs and oral arguments on behalf of both sides and a carefully prepared and reasoned opinion of the trial court.
We disagree with the trial court's construction of two Special Acts passed by the legislature in the same legislative session  the first giving zoning power to the city over annexed property including that in question here and the second directly imposing use restrictions upon the property in question. To avoid disharmony between the two acts the trial court ruled that the second was an interim measure to be effective only until the City enacted zoning ordinances pursuant to the power granted in the first. The trial court's reasoning, which appears to have been grounded in part upon a logical perception of what would be rational legislative action, is persuasive. However, in our view that construction overlooked a contrary manifestation of legislative intent. Judicial interpretations of legislative intent in cases like this are controlled by the principle that a clear manifestation of legislative intent predominates over a logical perception of legislative wisdom. See Neu v. Miami Herald Publishing Co., 462 So.2d 821 (Fla. 1985); Wait v. Florida Power & Light Co., 372 So.2d 420 (Fla. 1979). The doctrine of separation of powers which is, of course, an essential part of our constitutional form of government requires this conclusion.
We adopt the following portions of the trial court's opinion setting out the facts.
"The Plaintiffs are owners of property zoned C-1 in the City of Tampa's Official Zoning Atlas. The individual Intervening Defendants are residents of a platted residential area known as Parkland Estates which is immediately adjacent to and includes the Plaintiffs' property. PARKLAND ESTATES CIVIC CLUB, INC. [also an intervenor] is a not-for-profit corporation comprised of residents of Parkland Estates.
"This action arose as an action for declaratory judgment between the Plaintiffs and the City of Tampa regarding the existing zoning classification of certain property *13 located in the City of Tampa and owned by the Plaintiffs. [Plaintiffs sought a declaration that their property is validly zoned C-1]. However, shortly after the filing of the complaint, the Intervenors became aware of the existence of this action and filed their motion for leave to intervene which this Court subsequently granted. All Defendants filed answers to the complaint with the City of Tampa essentially admitting the Plaintiffs' contentions as alleged in their complaint while the Intervening Defendants took a diametrically opposite position to that of the Plaintiffs.
"The Plaintiffs contend that their property is, and has been since 1956, controlled by the City of Tampa zoning ordinance and that the property's existing C-1 zoning classification is valid and enforceable. The Intervening Defendants contend that use of the subject property was restricted by a special act of the legislature [restricting the property to single family residential uses]; that both the special act of annexation and the City's zoning ordinance expressly state that they are not to be deemed to repeal special acts of the legislature; and that the restrictions in the special act of the legislature supersede the uses permitted by the City's zoning ordinance. Thus the ultimate issue in this case is whether or not the City could by its zoning ordinance lawfully permit uses for the subject property which conflicted with restrictions imposed by special act of the legislature. In resolving that issue, the following facts, which the parties do not dispute, are pertinent:
"1. In 1951, the Florida Statutes included Chapter 176, Section 176.02, which provided as follows:
`176.02 Municipalities may regulate building density of population, and the location and use of buildings, structures and land and water. For the purpose of promoting health, safety, morals, or the general welfare of the communities and municipalities of the State of Florida, said municipalities may regulate and restrict the height, number of stories, and size of buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts, and other open spaces, the density of population, and the location and use of buildings, structures, and land and water for trade, industry, residence or other purposes. Wherever the governing body of any municipality shall elect to exercise any of the powers granted to it under this chapter, said powers shall be exercised in the manner hereinafter prescribed and in accordance with the charter of such municipality.'
This provision was in effect in 1953, and as amended, has had continued validity to the present time, presently as § 163.205, Fla. Stat. (1983).
"2. In 1953, the Florida Legislature enacted Special Act 29548 [hereafter the `Annexation Act'], which annexed property into the City of Tampa, including the subject property. Section 3(a) of that Special Act reads as follows:
`Unless otherwise provided herein, the City of Tampa shall have and may exercise within its corporate limits, as extended by this act, all of the powers and authority it now has under its Charter and under the Constitution and Laws of the State of Florida. Nothing herein shall be construed as in any way limiting, or abridging the exercise of, any power conferred on said City, its officers or boards, by any general or special law now in force, unless such law is in conflict with the provisions of this act, or unless expressly hereby repealed.'
Section 12(a) of this Special Act reads as follows:
`The City of Tampa shall have full authority to exercise within and over the annexed territory all powers granted to it under Chapter 176, Florida Statutes, 1951, or any other statutes supplemental or cummulative thereto, and, in the exercise of such powers shall have exclusive jurisdiction over the annexed territory, notwithstanding Chapter 24,592, Special Acts of 1947, as amended by Chapter 25,889, Special Acts of 1949, and as further *14 amended by Chapter 27,613, Special Acts of 1951.'
Section 12(f) of this Special Act reads as follows:
`Nothing contained in this Act shall be deemed to repeal, modify, or affect Chapter 14,104, Special Acts 1929, as amended by Chapter 19,869, Special Acts of 1939, or Chapter 18,899 or Chapter 18,932, Special Acts of 1937, or Chapter 24,580, Special Acts of 1947, as amended by Chapter 25,888, Special Acts of 1949, or Chapter 25,887, Special Acts of 1949, as amended by Chapter 27,602, Special Acts of 1951, or any other statute imposing regulations or restrictions on the use of land within the annexed territory, or to abrogate any restrictive covenants or conditions affecting the use of any such land which may exist by virtue of any recorded plat, restrictions, deed, agreement or other instrument.'
Section 12(g) of this Special Act reads as follows:
`No portion of the annexed territory, regardless of whether or not the same has been or could be zoned by the Hillsborough County Board of County Commissioners under said Chapter 24,592, as amended, shall become subject to any zoning regulations or restrictions heretofore adopted by the City of Tampa pursuant to the provisions of Chapter 176, Florida Statutes, 1951, but all of the annexed territory shall be subject to the future exercise by the City of Tampa of its powers under said Chapter 176 as provided in subparagraph (a) of this section 12.'
"3. In the same 1953 legislative session, the Florida Legislature [thereafter] passed Special Act 29126 [hereafter the `Parkland Estates Act'], which zoned lots in the Parkland Estates Subdivision `... for use and to be occupied only for single family private residential and dwelling purposes...', with certain exceptions not pertinent herein. Section 7 of this Special Act reads:
`Section 7. That Parkland Estates Civic Club, Inc., a non-profit corporation under the Laws of Florida, organized by the owners and residents of Parkland Estates Subdivision, or any property owner or bona fide resident of said area, shall have power and authority to enforce compliance with the provisions hereof by injunction or any other civil proceeding appropriate or available.'
"4. The City of Tampa on January 17, 1956, passed Ordinance No. 1980-A, which ordinance adopted a zoning code for the City, including the C-1 zoning neighborhood-commercial district. That ordinance established § 39.17 of the City Code, which, in subsection 3, provides that:
`... 3. Nothing in this Ordinance shall be construed or held to amend, alter, modify, change or otherwise affect any use of land as provided for in any law of the State of Florida or any ordinance of the City of Tampa that does not relate to zoning rules and regulations.'
That ordinance also established Section 39.31 which reads as follows:
`In interpreting and applying the provisions of this ordinance, they shall be held to be the minimum requirements for the promotion of the public health, safety, morals and general welfare of the community. Whenever any provisions for the use of land in the City of Tampa as shown by the zoning map and by these regulations shall conflict with any private contract, restrictive covenant, negative easement, equitable servitude or other agreements between private parties, the provisions of the zoning map of the City of Tampa and of these zoning regulations shall govern and be effective and control, notwithstanding such private contract rights. Nothing contained in this ordinance shall be construed as superseding any Special Act of the Legislature relative to the subject matter of this ordinance. If, because of error or omission in the zoning map, any land in the City of Tampa is not shown as being a zoning District, the classification of such land shall be R-1 single family, unless changed by amendment to the zoning Ordinance.'"
*15 Summarizing the sequence of relevant events: in 1953, section 176.02, Florida Statutes (1951) was in effect and gave to cities powers over the use of land within their boundaries; in 1953 the Annexation Act was passed by the legislature annexing additional property into the City of Tampa and giving the City powers over annexed property as provided in section 176.02; six weeks later, in the same legislative session, the legislature passed the Parkland Estates Act restricting the use of certain property within the annexed territory; and then, three years later in 1956, the Tampa City Council passed ordinance no. 1980-A purporting to zone C-1 (Neighborhood Commercial District) certain portions of Parkland Estates.
We agree with what the trial court referred to in the remainder of his opinion as the established doctrine that legislative acts in pari materia should be construed together. We concur with the trial court's quotation of Markham v. Blount, 175 So.2d 526, 528 (Fla. 1965) saying, "where the courts can, in construing two statutes, preserve the force of both without destroying their evident intent, it is their duty to do so." The Annexation Act and the Parkland Estates Act, which were passed in the same legislative session, should be construed, if possible under their respective wordings, harmoniously and as actuated by the same policy. See Tamiami Trail Tours v. City of Tampa, 159 Fla. 287, 31 So.2d 468 (1947); Curry v. Lehman, 55 Fla. 847, 47 So. 18 (1908).
However, we disagree that the Annexation Act and the Parkland Estates Act can be construed harmoniously only by finding the Parkland Estates Act to have been an interim measure. Our construction of the Parkland Estates Act as an exception to the Annexation Act, as provided for in the Annexation Act, does not cause the Parkland Estates Act to be in conflict with the Annexation Act. Also, we are unable to conclude that the two acts can be properly construed to have meanings which meet the foregoing statutory construction goal of both acts having been actuated by the same policy. That goal has been a factor making this a close case. The trial court's construction appears to have fulfilled that goal; ours is that fulfillment of that goal is not possible under the wordings of the acts.
It is true that the Annexation Act provided for future zoning to be by the city. It is also true that at the time of enactment of the Annexation Act there was as yet no city zoning for any of the annexed property. Therefore, it is valid to conclude that the legislature understood that the Annexation Act created a hiatus in zoning until the City enacted zoning ordinances. However, we do not conclude that the legislature manifested an intent that the subsequently enacted Parkland Estates Act was only to be in force to fill that hiatus for the property in question.
We feel that to view the Parkland Estates Act, by which the legislature restricted the property in question to residential uses, as only an interim measure to fill that hiatus until the City enacted zoning ordinances would require speculation which cannot be grounded upon any manifestation of legislative intent, however rational the result of that view may be. The Parkland Estates Act in its terms was in no way identified by the legislature as an interim measure. If the legislature had intended it to be an interim measure, we must presume the legislature would have said so. See J.D.B. v. State, 463 So.2d 486 (Fla. 2d DCA 1985).
On the other hand, in section 12(f) of the Annexation Act the legislature specifically provided that, notwithstanding the grant of zoning power to the City in other sections of that act, exceptions were recognized. Section 12(f) provided that no such grant of power should affect certain designated Special Acts and "any other statute imposing regulations or restrictions on the use of land within the annexed territory... ." The Parkland Estates Act, which became effective in the same legislative session subsequent to the Annexation Act, constituted such a statute imposing regulations or restrictions on land within that *16 territory. Thus, the Parkland Estates Act was the type of exception recognized in the Annexation Act to the grant of zoning power given to the City by that act.
The potentially conflicting considerations principally involve the Annexation Act's broad grant of zoning power to the City over the annexed territory, on the one hand, and the Parkland Estates Act's specific use restrictions on particular property within the annexed territory, on the other. The differing positions of both sides have merit; each side argues for a result which would avoid conflict between the two acts and which would appear rational in one sense or another. Further below, however, we draw a distinction between perceiving a result of a statute which would be rational and perceiving a rational basis for interpreting the intended result of a statute.
In cases which involve unmanifested, and therefore unclear, legislative intent we might perceive the legislative intent from a conclusion as to which possible result of the legislation in issue would be rational. See Wakulla County v. Davis, 395 So.2d 540, 543 (Fla. 1981). However, the first step is to determine whether there is a clear manifestation of legislative intent. In this case the determinative issue is under that first step and is whether from legislative wording there can be said to have been a manifestation of legislative intent that the Parkland Estates Act was to be an exception to the zoning powers granted to the City in the Annexation Act or, on the other hand, that it was to be an interim measure until the City enacted zoning restrictions. There is controlling guidance in the wording of section 12(f) of the Annexation Act. We have concluded, as explained further above, that section 12(f) contains language manifesting the legislature's intent that the Parkland Estates Act was to be an exception to city zoning powers granted in the Annexation Act. There is no legislative manifestation in the Parkland Estates Act or in the Annexation Act that the Parkland Estates Act was meant to be an interim measure. "It is neither the function nor perogative of the courts to speculate on constructions more or less reasonable, when the language itself conveys an unequivocal meaning." Heredia v. Allstate Insurance Co., 358 So.2d 1353, 1355 (Fla. 1978).
We recognize appellees' position that the Annexation Act limited those types of legislative exceptions to the City's zoning powers to only acts of the legislature which were in effect at the time of enactment of the Annexation Act. Appellees argue that the use of what they refer to as the present tense in section 12(f) relative to what Special Acts were excluded from the grant of zoning power to the City shows that the legislature only intended to so exclude certain already enacted Special Acts; they point out that such already enacted Special Acts were specifically listed in section 12(f) and pertained to other areas within the annexed territory. However, if that had been the legislature's intent and presuming that the legislature specifically listed in section 12(f) all of the then existing Special Acts meant to be excepted, there would have been no reason for section 12(f) to have also excepted "any other statute imposing regulations on the use of land within the annexed territory." Cf. Orr v. Trask, 464 So.2d 131 (Fla. 1985) (the legislature is presumed to know existing statutory law). In any event, we think appellees have used strained reasoning in characterizing the relevant language as being in the present tense. The legislature's reference to "any other statute imposing" (emphasis added) such regulations is not, in our view, restricted to the present tense in the sense appellees argue. Such statutes imposing such regulations can naturally be taken to include not only those in force at that time but also those later enacted, as was the Parkland Estates Act approximately six weeks later. Whether or not, in a technical sense, the word "imposing" is in the present tense, the preceding words "any other statute" are without qualification and connote a statute enacted at any time (and which at the time of its enactment imposes, or is "imposing," such regulations). Further, to the extent that the *17 present tense may be argued to have been used in section 12(f), "when a statute is expressed in general terms and in words of the present tense, it will generally be construed to apply not only to things and conditions existing at the time of its passage, but will also be given a prospective effect and made to apply to such as come into existence thereafter." State v. City of Miami, 101 Fla. 292, 134 So. 608, 609 (1931).
In support of their foregoing position appellees further argue that section 3(a) of the Annexation Act says that "Nothing herein shall be construed as in any way limiting ... any power conferred on said city ... by any general or special law now in force." Appellees argument could be that section 176.02, Florida Statutes (1951), was the type of general law then in force to which section 3(a) referred. However, even if the foregoing first portion of section 3(a) means that the provisions of section 176.02 shall not be limited by any exceptions to the City's zoning powers as provided for in the Annexation Act (which, for other reasons relating to the wording of sections 3(a) and 12(f), we would doubt), the last clause of section 3(a) would effectively negate any such interpretation. That last clause provides that any general law in effect at the time of the Annexation Act which is in conflict with the Annexation Act shall yield to the provisions of the Annexation Act.
As indicated above, we recognize appellees' argument that we should perceive legislative intent that the Parkland Estates Act be an interim measure because that would be a sensible and rational result. Appellees argue that to perceive legislative intent otherwise would create within the City an enclave protected from city zoning, which would not be sensible. However, a legislative intention that the Parkland Estates Act be an exception to the Annexation Act's grant of zoning powers to the City would be a sensible and rational statutory interpretation of those Special Acts. The validity of this interpretation is shown by the language of section 12(f) of the Annexation Act in which the legislature unquestionably excepted other, more particularly described properties from the grant of zoning power to the City. If we were to address the wisdom of the Parkland Estates Act, we might then be inclined to agree that an intent by the legislature that the Parkland Estates Act be such an exception would not seem wise, i.e., that, at least as a general rule, it would not seem wise to split between a city and the legislature zoning powers over city property and that a city is the most appropriate governing body to exercise zoning powers over property within its boundaries. But determining the wisdom of a particular legislative enactment is not under the circumstances of this case a judicial function. A court's construction of statutes need not produce what the court might perceive to be a wise result in order to constitute a rational interpretation of legislative intent. Also, there is no argument that the legislature exceeded its authority by creating this type of exception.
The principle of ejusdem generis might be applied so as to render the foregoing general wording of section 12(f) of the Annexation Act ("any other statute... .") to be within the same general kind or class of the prior wording of section 12(f) which designated other, particular Special Acts concerning other properties in the city to be excepted from the grant of zoning power to the City. It is obvious from application of that principle and from subsequent wording of section 12(f) that the "any other statute" language refers to legislation like that in the prior wording, i.e., legislative restrictions on city property. See Black's Law Dictionary 608 (4th ed. 1951). However, that principle cannot validly be stretched to also restrict that language to only a statute enacted prior to the enactment of the Annexation Act as were those prior designated statutes.
Both sides present arguments concerning the perceived significance or lack of significance of other legislative history relative to the vesting of zoning powers in local governments. Appellees accurately argue that the history of legislation *18 involving zoning up to the present reflects a general legislative plan to vest local governments with broad zoning authority. Appellees cite, as reflecting that plan, the Intergovernmental Relations Act, Part II, chapter 163, Florida Statutes (1969); the Municipal Home Rule Powers Act, chapter 166, Florida Statutes (1973); and the Local Government Comprehensive Planning Act, chapter 163, Florida Statutes (1975), augmenting the 1969 version of chapter 163. But, to the extent that that legislative plan came into effect subsequent to 1953, we do not employ it to control our interpretation of legislative intent in 1953. See Foley v. State, 50 So.2d 179, 184 (Fla. 1951); Curry v. Lehman, 55 Fla. at 854, 47 So. at 20. Also, we are aware of no post 1953 legislative enactment which repealed what we have construed to be the legislative intent in 1953 to except from the City's zoning powers the property which is subject to legislative regulation under the Parkland Estates Act. We do not find from a general legislative plan of that kind a legislative intent to repeal what we have found to be the specifically intended effect of a particular legislative act. See Town of Indian River Shores v. Richey, 348 So.2d 1 (Fla. 1977). See also Town of Palm Beach v. Palm Beach Local 1866, I.A.F.F., 275 So.2d 247 (Fla. 1973); State v. Sarasota County, 74 So.2d 542 (Fla. 1954); Woodley Lane, Inc. v. Nolen, 147 So.2d 569 (Fla. 2d DCA 1962).
Appellees also cite as a part of that legislative history the language of section 176.02, Florida Statutes (1951), which, as first enacted well prior to the Special Acts under consideration here, authorized cities to zone property within their boundaries. But, as indicated above, we do not view that general language, any more than we view that of the Annexation Act itself which granted the City of Tampa zoning powers, as overcoming the manifested intent of section 12(f) of the Annexation Act to except certain properties from City zoning powers.
It is not irrelevant to note that our construction of the legislature's intent does not appear to be inconsistent with the city ordinance in question. Subsection 3 of section 39.17 of that ordinance, as quoted by the trial court, recognizes that the ordinance shall not affect the use of land which is "provided for in any law of the State of Florida," such as the use of land restricted by the Parkland Estates Act. Also, section 39.31 of the ordinance, as quoted by the trial court, provides more specifically that "nothing contained in this ordinance shall be construed as superseding any Special Act of the Legislature relative to the subject matter of this ordinance."
Our province in this case is only to construe legislative intent. Appellees' avenue for any relief from the Parkland Estates Act lies with the legislature. See Heredia, 358 So.2d at 1355. In these circumstances a request for a change in the legal status quo, to wit, the apparently wholly residential character of the property in question, would be more appropriately addressed to the body which created that status (and which at the same time created the situation which led to this litigation and which we have resolved in this case).
Reversed and remanded for entry of a judgment declaring that the land in question which is subject to the Parkland Estates Act is not subject to city zoning.
RYDER, C.J., and SCHOONOVER, J., concur.